```
1  CRAIG H. MISSAKIAN (CABN 125202)
   United States Attorney
2
   MARTHA BOERSCH (CABN 126569)
3  Chief, Criminal Division

4  NOAH STERN (CABN 297476)
   Assistant United States Attorney
5
        450 Golden Gate Avenue, Box 36055
6       San Francisco, California 94102-3495
        Telephone: (415) 436-6758
7       FAX: (415) 436-7234
        Noah.Stern@usdoj.gov
8
   Attorneys for United States of America
9
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| UNITED STATES OF AMERICA, | ) CASE NO. 4:25-mj-71375-MAG |
|---|---|
| Plaintiff, | ) MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION FOR DETENTION |
| v. | ) Date: November 25, 2025 |
| CHAM LI, | ) Time: 10:30 a.m. |
| a/k/a Tony Li, | ) Court: Honorable Kandis A. Westmore |
| Defendant. | ) |

The United States of America, by and through the undersigned attorneys, submits this memorandum in support of its motion to detain Defendant Cham Li a/k/a/ "Tony Li" in the above-captioned case. Li—who, among other things, engaged in a conspiracy to send highly-controlled U.S.-origin NVIDIA Graphics Processing Units ("GPUs") to the People's Republic of China ("PRC")—should be detained because there is a significant risk he will flee if released from custody. Li's sentencing exposure (estimated guidelines of 151-188 months) gives him a powerful incentive to flee and his significant ties to China give him the means to flee. Li's risk of flight is compounded by his ties to the Chinese Communist Party ("CCP"), whom he may rely on to flee and conceal his whereabouts, and the nature of his serious crimes that put U.S. national security at risk and were, in part, to benefit

China. For those reasons, further detailed in this brief, the United States respectfully submits that the Defendant should be detained pending trial.

## BACKGROUND

**I.      Offense Conduct**

Through its cutting-edge GPU technology, NVIDIA has quickly made a name for itself as a global leader in high-performance computing and artificial intelligence ("AI"). And the People's Republic of China (the "PRC" or "China") wants access to NVIDIA's technology. But allowing the PRC to obtain NVIDIA GPUs puts the citizens of the United States at risk. Indeed, NVIDIA's top-of-the-line GPUs have the potential to enhance China's military capabilities, provide them with the opportunity to build training and inference of massive models (including those used in autonomous weapons, surveillance, and cyberwarfare), support authoritarian surveillance systems, and be weaponized to create deepfakes, fake news, or synthetic media for disinformation campaigns. So, to protect the national security of the United States, as of 2022, exporting GPUs to China—specifically the A100 GPU and H200 GPU—are export controlled, meaning they require a license to export.

Li, Hon Ning Ho a/k/a/ "Matthew Ho", Brian Curtis Raymond, and Jing Chen a/k/a "Harry Chen" (collectively, "the Defendants") conspired to violate these critical U.S. export controls by illegally exporting advanced GPUs to the PRC through Malaysia and Thailand. In planning the scheme, Li boasted about his father's connections to the CCP and how the CCP has ways to import export-controlled GPUs from the United States into China. Drawing on his father's experience procuring for the CCP, Li and Ho formed Janford Realtor, LLC—a Tampa, Florida-based company purportedly in the real estate business. But Janford was not involved in a single real estate transaction. Instead, Li and his co-conspirators used Janford to purchase NVIDIA GPUs—making it appear as if the GPUs were being purchased by a U.S. based company. Once Janford received the NVIDIA GPUs, Chinese co-conspirators would wire the funds for the GPUs to Ho or Raymond. In total, the co-conspirators received more than $3.89 million from Chinese co-conspirators to purchase NVIDIA GPUs.

Once the funds were received, Ho, Li, Chen, and Raymond exported (or attempted to export) NVIDIA GPUs to China. The first successful export occurred between October and December of 2024, when Janford exported 150 NVIDIA A100 GPUs from the United States to the PRC, transshipped

1  through Malaysia. The second export occurred in January of 2025, when Janford exported 250 NVIDIA
2  A100 GPUs from the United States to the PRC, again transshipped through Malaysia. A few months
3  later, in March of 2025, Janford and Bitworks (Raymond's company, which was licensed to sell
4  NVIDIA GPUs) unsuccessfully attempted to export 10 Hewlett Packard Enterprises supercomputers
5  containing NVIDIA H100 GPUs to the PRC, transshipped through Thailand. And the fourth attempted
6  export occurred in January and July, when the Janford and Bitworks unsuccessfully attempted to export
7  50 NVIDIA H200 GPUs from the United States to the PRC, transshipped through Thailand, but these
8  GPUs were seized by federal agents before they could be exported. In total, the co-conspirators
9  successfully shipped approximately 400 NVIDIA export-controlled GPUs to China and attempted but
10 failed to successfully export more.

## II.  Procedural History

On November 13, 2025, Li was charged by indictment in the Middle District of Florida with conspiracy to violate and violations of the Export Control Reform Act, in violation of 50 U.S.C. § 4819, smuggling, in violation of 18 U.S.C. § 554, and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). Ho, Raymond, and Chen were charged in the same indictment.

On November 19, 2025, all four defendants were arrested. The same day, in the Middle District of Florida, the Honorable Amanda S. Sansone, ordered that the two Tampa-based defendants, Ho (a United States citizen) and Chen (a U.S. F-1 visa holder) be detained pending trial, finding by a preponderance of the evidence that no condition or combination of conditions of release would reasonably assure those defendants' appearance. In the detention orders, Judge Sansone noted the extremely serious allegations of sending powerful GPUs with "immense processing power" to China in violation of export control laws. M.D. Fla. Case No. 8:25-cr-00530 (Docs. 25 at 4, 26). Judge Sansone also emphasized the national security threat associated with sending GPUs—which are ideal for developing large-scale Artificial Intelligence ("AI") models—to adversaries. As the basis for the detention, Judge Sansone also relied on the fact that Ho and Chen both had strong ties to China and if able to flee to China, would not be extradited back to the United States.

Also on November 19, 2025, Raymond (a U.S. citizen with overwhelming family and business ties to this country) made his initial appearance in the Northern District of Alabama, and the United

States agreed to his release on bond. The following day, on November 20, 2025, Li made his initial appearance in this matter, the government moved for detention, and the Court determined that the United States was entitled to a detention hearing pursuant to 18 U.S.C. § 3142(f)(2)(A).

## ARGUMENT

### I. Legal Standard

The Bail Reform Act of 1984 permits pretrial detention of a defendant without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(B). A finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Motamedi*, 767 F.2d at 1406. "[T]he Bail Reform Act mandates an [1] individualized evaluation [2] guided by the factors articulated in § 3142(g)." *See United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Categorical grants or denials of bail, not tethered to an individualized determination, are impermissible. *Id*. Consideration of factors outside the articulated factors set forth in Section 3142 is also disfavored. *Id*.

The Court must consider four factors in determining whether the pretrial detention standard is met: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

## II. The Section 3142(g) Factors Weigh In Favor of Detention

All of the relevant Section 3142(g) factors weigh in favor of detention and demonstrate that there are no combination of conditions of release that will reasonably assure Li's appearance in these proceedings.

*First*, the nature and circumstances of the offense supports detention. Allowing adversaries of the United States to obtain NVIDIA GPUs that have the capability to accelerate AI and high-performance computing is a threat to the national security of the United States. Indeed, as briefly explained above, NVIDIA's top-of-the-line GPUs have the potential to enhance China's military capabilities, provide them with the opportunity to build training and inference of massive models (including those used in autonomous weapons, surveillance, and cyberwarfare), support authoritarian surveillance systems, and be weaponized to create deepfakes, fake news, or synthetic media for disinformation campaigns. This is particularly concerning given the fact that in this case, when creating the scheme, Li boasted about his father's connections to the CCP, his father's ability to procure products on behalf of the CCP, and Li specifically told Ho that that his father would introduce Li directly to a Chinese procurement agent to discuss GPU pricing. There are few risks greater than Chinese citizens (living in the United States) knowingly evading export-control laws to procure highly-controlled technology directly on behalf of Chinese customers—specifically Chinese customers with direct ties to the CCP. The gravity of the crime that Li is charged with makes it more likely that he will flee to China if released rather than appear in this criminal case.

*Second*, the weight of the evidence favors detention because the evidence of Li's guilt is overwhelming and this increase his incentive to flee. To begin, Li made several incriminating statements to law enforcement agents on November 19, 2025, including admitting to knowing that Janford was exporting NVIDIA A100 chips to China despite knowing the A100 chips were export controlled, and doing so to profit financially. The evidence against Li also includes, among other things, text messages and chats between Li and his co-conspirators in which Li told Ho that the United States government banned the sale of GPUs to China. He sent a link to a news article titled "U.S. tells Nvidia to halt shipping AI chips to China immediately." Li sent a message containing a webpage for the Department of Commerce Bureau of Industry and Security Commerce Control List and Export Classification and

explained that an ECCN[1] is required. Li also specifically told Ho that a Chinese customer was going to send "specs" for products needed. Li confirmed that the customer knew these products were banned from being exported to China but explained that his father (who, as explained above, has ties to the CCP) "has ways to import." Put simply, Li was fully aware of the scheme and received payment for his part in the scheme.

While the weight of the evidence is the least important factor, here it gives Li a powerful incentive to flee given the punishment he is facing. Li—who is a Chinese national but currently a legal permanent resident of the United States—is facing a guidelines sentence of 151-188 months, followed by sure deportation. Fleeing would also mean Li could avoid the significant restitution and forfeiture that he will be subject to upon conviction. If, on the other hand, Li evades law enforcement and disappears to China (where he would not be extradited), he will avoid prison all together while ending up in the same place he would if he stayed to serve a lengthy prison sentence.

***Third***, Li's history and characteristics considered under §§ 3142(g)(3), also strongly favor detention. Li is a citizen of Hong Kong—part of China—with significant additional ties to China. Indeed, his father is closely connected to the CCP. His immediate family is in China—including his father who lives in China and his mother who lives in Hong Kong. Li's loyalty is to China—not the United States. He also has demonstrated an ability to leave the United States, including significant overseas travel with multiple trips to Hong Kong and Taiwan.

***Fourth***, the conspiracy charged in the Indictment poses a significant danger to the community. As explained above, there are serious national security concerns associated with the export of highly-controlled NVIDIA chips to the adversaries of the United States. And Li appears to have been engaged in this conduct up until his arrest. Indeed, during his interview with law enforcement, Li admitted to discussing exporting export-controlled NVIDIA chips to a client of his father, located in China, as recently as *two weeks ago*.[2] The ongoing nature of Li's crimes, coupled with the threat to the national security of the United States, weighs in favor of detention.

---

[1] An ECCN refers to an "Export Controlled Classification Number."

[2] According to Li, he did not intend to engage in this transaction with his father.

Taken together, there are no conditions of release that can reasonably assure Li's appearance in this case and he should be detained pending trial.

**CONCLUSION**

For the foregoing reasons and the reasons stated on the record at the hearing held on November 20, 2025, the Court should grant the United States' motion to detain Li pending trial.

DATED: November 24, 2025

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

_____/s/_____
NOAH STERN
Assistant United States Attorney